UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| KENTRELL D. WELCH, | Case No. 3:22-cv-00557-MMD-CLB |
| Plaintiff, | ORDER |
| v. | |
| CHARLES DANIELS, *et al.*, | |
| Defendants. | |

## I.   SUMMARY

*Pro se* Plaintiff Kentrell Welch, who is an inmate in the custody of the Nevada Department of Corrections ("NDOC"), brings this civil-rights action under 42 U.S.C. § 1983 to redress constitutional violations he claims he suffered while he was incarcerated at Ely State Prison ("ESP"). (ECF No. 1.) The Court screened Plaintiff's Second Amended Complaint (ECF No. 7 ("SAC")) and found that Plaintiff states a colorable Eighth Amendment claim for deliberate indifference to unsafe prison conditions related to COVID-19 exposure at ESP. (ECF No. 9 ("Screening Order").) Defendants[1] filed a motion to dismiss. (ECF No. 21 ("Motion").) Plaintiff responded to the Motion (ECF Nos. 25, 26) and Defendants replied (ECF No. 27). Before the Court is United States Magistrate Judge Carla L. Baldwin's Report and Recommendation ("R&R"), recommending that the Court deny the Motion. (ECF No. 28.) Defendants timely objected to the R&R (ECF No. 29 ("Objection")), and Welch responded (ECF No. 33 ("Response")). For the reasons explained below, the Court overrules the Objection and adopts the R&R in full.

---

[1]Defendant NDOC employees include Sean Donahue, Daniel Featherly, Cade Herring, Curtis Rigney, Corey Rowley, Alexander Werner, and Daniel Wheeler. (ECF No. 21.) In the Screening Order. the Court allowed claims to proceed against several additional NDOC Defendants who did not move to dismiss. (ECF No. 9.) Those Defendants are not addressed in this order.

## II. DISCUSSION[2]

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects to a magistrate judge's R&R, the Court must "make a *de novo* determination of those portions of the R&R to which objection is made." *Id.* Defendants here object to the R&R, which recommends denial of their motion to dismiss under Fed. R. Civ. P. 12(b)(6), on three bases: (1) the R&R improperly relied on the Screening Order as a substitute for analyzing Defendants' specific legal arguments outlined in the Motion; (2) the Screening Order and R&R incorrectly determined that Welch states a plausible Eighth Amendment claim to overcome the first prong of the qualified immunity test; and (3) the R&R conducted the "clearly established law" prong of the qualified immunity analysis at too high a level of generality. (ECF No. 29 at 3-6.) The Court first addresses Defendants' argument as to reliance on the Screening Order and finds the R&R did not improperly rely on the previous screening of the SAC under 28 U.S.C. § 1915A(a). Next, even setting aside that the Screening Order already appropriately addressed some aspects of the analysis, the Court considers that Defendants essentially object to the R&R's recommendation that they are not entitled to qualified immunity in its entirety and finds, on *de novo* review, that qualified immunity does not warrant dismissing Welch's claims.

Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), the same standard the Court applies under 28 U.S.C. § 1915(e)(2) when reviewing the adequacy of a prisoner complaint or an amended complaint. Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if the plaintiff clearly cannot prove any set of facts in support of the claim that would entitle them to relief. *See Morley v. Walker*,

---

[2]The Court incorporates by reference Judge Baldwin's description of the background of the case and recitation of pertinent allegations in the SAC, provided in the R&R. (ECF No. 28 at 1-2.)

175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the Court takes as true all factual allegations stated in the complaint and construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations are "liberally construed" in favor of the *pro se* plaintiff at this stage. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). Generally, a district court is permitted to "look only at the face of the complaint to decide a motion to dismiss." *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels, conclusions, or a formulaic recitation of the claim's elements. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

### A. The R&R's Reliance on Screening Order

Defendants first object to the R&R on the basis that Judge Baldwin should have analyzed specific legal arguments in their Motion "regarding the first prong of qualified immunity and the plausibility of Welch's Eighth Amendment claim," rather than relying on the Court's Screening Order to find Welch plausibly states an Eighth Amendment claim. (ECF No. 29 at 3.) The Court overrules this ground asserted in the Objection and additionally finds the R&R adequately analyzed Defendants' arguments.

#### 1. Approaches to post-screening motions to dismiss

District courts have adopted differing approaches when handling Rule 12(b)(6) motions to dismiss complaints that were already screened under 28 U.S.C. § 1915A(b). *See Baldhosky v. Hubbard*, No. 1:12-cv-01200-LJO-MJS PC, 2017 WL 68098, at *2 (E.D. Cal. Jan. 5, 2017). The Court finds no mandatory authority favoring one approach over another but finds persuasive the recurring reasoning across approaches that courts need not revisit duplicative arguments on previously decided issues.

One approach utilizes the law of the case doctrine, which precludes a court "from reconsidering an issue previously decided by the same court, or a higher court in the identical case." *Ingle v. Circuit City*, 408 F.3d 592, 594 (9th Cir. 2005) (quoting *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000)). District courts following

this approach find "a screening order which utilized the same legal standard upon which a subsequent motion to dismiss relies necessarily implicates the law of the case doctrine." *Green v. Chakotos,* No. 1:11-cv-01611-LJO-DLB PC, 2014 WL 3563314, at *3 (E.D. Cal. July 18, 2014). To be excepted from the law of the case doctrine, the party seeking dismissal must articulate grounds for their Rule 12(b)(6) motion "in light of a screening order finding the complaint stated a claim." *Id.* (citing *Ingle*, 408 F.3d at 594 (finding that clear error in the earlier decision or an intervening change in the law are among the exceptions to the law of the case doctrine which might merit revisiting a prior determination)).

Under a second similar approach, a post-screening motion for dismissal under 12(b)(6) is treated as a motion for reconsideration. Multiple district courts, including district courts within the Ninth Circuit, have found "a Rule 12(b)(6) motion to dismiss is almost never an appropriate response when the Court has already screened a prisoner complaint pursuant to 28 U.S.C. § 1915A(b)." *Perez v. Ryan*, No. CV 19-05602-PHX-MTL (JFM), 2021 WL 100855, at *2 (D. Ariz. Jan. 12, 2021). *See also, e.g.*, *White v. Nunley*, No. 4:23-CV-P130-JHM, 2024 WL 1904339, at *1 (W.D. Ky. Apr. 30, 2024); *Thompson v. Yates*, No. 1:06-cv-00763-RCC, 2011 WL 1753149, at *1 (E.D. Cal. May 6, 2011). Consequently, these courts find that "after the Court has screened a prisoner's complaint . . . a Rule 12(b)(6) motion to dismiss should be granted only if the defendants can convince the Court that reconsideration is appropriate. Reconsideration is appropriate only if the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *Id.* (quoting *School Dist. No. 1J, Multnomah Cnty. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)). *See also Manon v. Hall*, No. 3:14-CV-1510 (VLB) 2015 WL 8081945, at *3 (D. Conn. Dec. 7, 2015) (finding a party should *never* "seek dismissal of claims that the Court has determined to be non-frivolous" if the sole basis for seeking dismissal is that the moving party disagrees with the prior finding).

By contrast, other district courts follow a third approach and find that a 12(b)(6)

4

motion must be heard on its merits because 28 U.S.C. § 1915(e)'s "screening and dismissal procedure is cumulative of, not a substitute for, any subsequent Rule 12(b)(6) motion that the defendant may choose to bring." *Teahan v. Wilhelm*, 481 F.Supp.2d 1115, 1119 (S.D. Cal. 2007). But even then, at least one district court adopting this approach has emphasized to defendants that they are "cautioned, in the future, to move for dismissal wisely" when the Court has already screened the pleading. *Martindale v. Kirkegard*, No. CV-15-00111-H-DLC-JTJ, 2016 WL 4275997, at *1 n.2 (D. Mont. July 15, 2016).

### 2. The R&R's finding as to Welch's Eighth Amendment claim

While there is no binding Ninth Circuit precedent requiring the Court adopt one of these approaches, the Court agrees with courts who adopt the first and second approaches. They apply the same reasoning—with which the Court agrees—counseling against duplicative consideration of the same issues addressed at the screening stage. The Supreme Court has recognized that "the PLRA mandated early judicial screening to *reduce* the burden of prisoner litigation on the courts." *Jones v. Bock*, 549 U.S. 199, 223 (2007) (emphasis added). As this Court has recognized in other contexts involving screening under 28 U.S.C. § 1915, Defendants' preferred result would *increase*, not reduce, the burden on federal courts. *See Olausen v. Sgt. Murguia*, No. 3:13-cv-00288-MMD-VPC, 2014 WL 6065622 (ECF No. 96) (D. Nev. Nov. 12, 2014). The Court concludes that Judge Baldwin did not erroneously rely on the Screening Order's finding that Welch plausibly states an Eighth Amendment claim and agrees with the R&R that, "because the District Court has already determined that Welch states a colorable Eighth Amendment claim against Defendants, and Defendants provide no additional basis for dismissal at this early stage of litigation," Defendants' Motion to Dismiss should be denied. (ECF No. 28 at 5-6.) In fact, Judge Baldwin essentially followed the law of the case as articulated in the Screening Order.

Defendants' Motion articulates no grounds which would invoke an exception to the law of the case doctrine or require reconsideration of the Screening Order's findings.

Nowhere in the Motion did Defendants support a claim the Court erred in its Screening Order or that a change in law since the Screening Order necessitates reexamining the SAC's plausibility. Moreover, any additional facts or evidence outside the SAC that Defendants say undermine Welch's Eighth Amendment claim's plausibility—like those related to COVID-19 testing and screening protocols for prison employees—fall outside the scope of a Rule 12(b)(6) motion to dismiss, which looks to "the face of the complaint." *Van Buskirk*, 284 F.3d at 980. Thus, the Court rejects Defendants' contention that Judge Baldwin is required to analyze their arguments on the plausibility of Welch's Eighth Amendment claims when the Screening Order already contains that analysis.

### 3. Application to first prong of the qualified immunity analysis

When the scope of Defendants' Objection is narrowed from the overall plausibility of Welch's Eighth Amendment claim to whether the R&R adequately considered their arguments on the first prong of the qualified immunity test, Defendants still fail to show Judge Baldwin's analysis was inadequate. Because qualified immunity is "immunity from suit rather than a mere defense to liability," it may be raised early to allow a defendant to avoid trial costs and the "burdens of broad-reaching discovery." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). However, the Ninth Circuit has held that "determining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018). Moreover, though qualified immunity can be raised on a Rule 12(b)(6) motion, the Court need not duplicate its review of both prongs of the qualified immunity test when it has already evaluated the first prong during screening. *See C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (providing that the first prong of the qualified immunity analysis is "whether an official violated a constitutional right"); *Perez v. Ryan*, No. CV 19-05602-PHX-MTL (JFM), 2021 WL 100855, at *3 (D. Ariz. Jan. 12, 2021) (finding that the "first prong of the qualified immunity analysis is satisfied" for a motion to dismiss if the court's prior screening order found the plaintiff inmate sufficiently stated an Eighth Amendment claim).

Here, Defendants correctly note that screening orders do not explicitly account for

qualified immunity arguments, and the Screening Order did not address whether Welch's claimed harm was clearly established to satisfy the qualified immunity analysis' second prong. However, the Screening Order contains the Court's thorough discussion of the first prong of the qualified immunity analysis, including examination of the prong's objective and subjective requirements. (ECF No. 9 at 6-8.) The Court found Welch plausibly pleads a violation of his constitutional rights. (*Id.*) Judge Baldwin adopted this finding and analysis in the R&R. (ECF No. 28 at 5-6.) In sum, without Defendants articulating some additional basis in the Motion, the Court is not required and declines to reexamine what the Court already scrutinized during screening.

### B. Qualified Immunity

To determine whether qualified immunity warrants granting dismissal in a case regarding deliberate indifference to unsafe prison conditions, the Court applies the 12(b)(6) plausibility standard to a two-prong test—"(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *City of Sonora*, 769 F.3d at 1022 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). District courts have discretion to address these prongs in any order. *See Pearson*, 555 U.S. at 236. Though the Court evaluated the first prong in the Screening Order, as described above, and the R&R addressed the second prong, the Court conducts *de novo* review of both prongs to address Defendants' objections to the R&R's recommendation on qualified immunity.

#### 1. Constitutional violation

Under the first prong, a plaintiff must meet two requirements to establish that an official violated a constitutional right, one objective and the other subjective. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Welch satisfies both here to plausibly claim Defendants violated his constitutional rights.

##### a. Objective requirement

To meet the objective requirement, a plaintiff must plausibly allege that a defendant exposed him involuntarily to a risk which is "contrary to current standards of decency for

7

anyone" to be exposed to. *Hampton v. California*, 83 F.4th 754, 766 (9th Cir. 2023) (citing *Helling v. McKinney*, 509 U.S. 25, 33 (1993)). For purposes of the Motion only, Defendants concede that the risk of involuntary exposure to COVID-19 fulfills this requirement. (ECF No. 29 at 11.) The Court need not further analyze this requirement.

### b. Subjective requirement

The subjective requirement asks whether defendant prison officials were *deliberately* indifferent to inmate health or safety. *See Farmer*, 511 U.S. at 834. Deliberate indifference "entails something more than mere negligence," but "something less" than purposefully causing harm or acting knowing that harm will result. *Id.* at 835. Defendants contend that Welch fails to demonstrate deliberate indifference on three grounds, each of which fail. First, Defendants dispute that Welch has pleaded they are the actual and proximate cause of his harm. (ECF No. 29 at 11.) Second, they argue Welch does not plausibly claim Defendants knew of and disregarded a risk of exposing Welch to COVID-19. (*Id.* at 11-12.) Third, Defendants contend that even if they violated prison policy on personal protective equipment ("PPE"), this does not constitute a deliberate indifference to Welch's Eighth Amendment rights. (*Id.* at 12.) The Court addresses each of these arguments in order.

First, Defendants argue that Welch does not adequately establish they are the actual and proximate cause of his injury because Welch never plausibly alleged "any Defendant ever exposed Welch to COVID-19."[3] (ECF No. 29 at 11). This argument is unconvincing considering the plain reading of the SAC. Welch alleges Defendants "exhibited reckless disregard" by keeping him in the same unit with "highly symptomatic" inmates and refusing to provide or wear PPE, "leaving him as medically vulnerable as a sitting duck." (ECF No. 7 at 7.) He alleges he and other inmates were not provided cloth masks to reduce the spread of COVID-19 until June 2020, and were not provided N-95 masks until November 2021. (*Id.*) Defendants Featherly, Herring, Rowley, Werner, and

---

[3]Welch must show that Defendants' deliberate indifference is the actual and proximate cause of his injury. *See Lemire v. California Dept. of Corrections and Rehabilitation*, 726 F.3d 1062, 1074 (9th Cir. 2013).

Wheeler "deliberately refused to adorn N-95 masks" and PPE while working on Welch's unit daily, "recklessly exposing" Welch to COVID-19. (*Id.*) Welch alleges he daily suffers "shortness of breath, fatigue, lack of strength" in his legs, hands, and body, while also facing three pre-existing chronic conditions. (*Id.* at 8.) He further alleges that Defendant Werner refused to wear an N-95 mask or PPE while distributing mail and meals in the prison unit, and Defendant Wheeler would tell Welch to "shut the fuck up" if Welch asked Wheeler to wear an N-95 mask or to instruct "his subordinate Werner to put on a mask per facility memo." (*Id.*) He alleges Defendant Rowley multiple times rebuffed Welch's requests that Rowley wear an N-95 mask while escorting Welch to legal visits, telling Welch to refuse visits if he did not want an escort. (*Id.*) Welch further alleges Defendant Herring would tell Welch to "shut the fuck up" and "no, I will not" when Welch asked him to wear an N-95 mask during "feedings." (*Id.*) Meanwhile, Defendants Wheeler and Featherly "refused to reprimand Herring to adorn safety gear." (*Id.*). And Welch alleges that Defendants Rigney and Donahue would not wear N-95 masks or PPE while serving food or transporting or escorting inmates. (*Id.*)

These allegations are sufficient at this stage to support that Defendants' refusal to wear N-95 masks and PPE and/or relocate Welch away from COVID-19-positive inmates was the actual and proximate cause of his exposure to COVID-19. (*Id.* at 7-9.) Defendants seemingly dispute causation on the basis that Defendants followed prison employee COVID-19 testing and screening protocols, also arguing Welch does not explicitly claim that Defendants infected his neighboring inmates with COVID-19. (ECF No. 29 at 11-12.) But the risk of a prisoner's harm can come from multiple sources. *See Farmer*, 511 U.S. at 843. Defendants could plausibly expose Welch to COVID-19 by not wearing PPE and/or knowingly keeping Welch near COVID-19-infected inmates. Whether COVID-19 screening and testing protocols for prison employees eliminated the risk of Defendants exposing Welch to COVID-19 is a factual dispute for later resolution.

Second, Welch plausibly claims Defendants knew of and disregarded the risk of exposing him to COVID-19. To be deliberately indifferent to an inmate's Eighth

Amendment rights, an official must know or infer "that a substantial risk of harm exists." *Id.* at 837. "A factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious*.*" *Id.* at 842*. See also, e.g.*, *Frost v. Agnos*, 152 F.3d 1124, 1129-30 (9th Cir. 1998) (finding that an inmate using crutches who never informed prison officials of his difficulty carrying his lunch tray did not face "obvious enough" risk to demonstrate prison officials' deliberate indifference to his future injury).

Defendants argue that they could not know they exposed Welch to COVID-19 because they underwent frequent COVID-19 screening protocols. (ECF No. 29 at 11-12.) But unlike in *Frost*, Welch informed Defendants Herring, Rowley, and Wheeler of his risk of harm—Welch explicitly requested they wear PPE to avoid exposing him to COVID-19. (ECF No. 7 at 8.) And importantly, Welch clearly alleges that Defendants violated existing prison policy regarding PPE. (*Id.*) Welch also alleges he was not provided an N-95 mask until November 2022. (*Id.* at 7.) Thus, Welch plausibly contends that Defendants wore no PPE in violation of prison policy, at a time when Welch had less protective PPE.

Liberally construing the allegations and drawing all reasonable inferences in Welch's favor, Welch's deficient PPE, the prison policy mandating Defendants to wear PPE, Welch's involuntary proximity to COVID-19-positive inmates, Welch's own admonitions to Defendants about masking, and the general societal consensus about COVID-19's dangerousness—which Defendants concede—plausibly alerted Defendants to an obvious risk of exposing Welch to COVID-19 and suggest that Defendants deliberately disregarded this obvious risk. "If masks and protective equipment were available, the choice not to use them would reflect disregard for prisoner safety." *Hampton*, 83 F.4th at 767. Moreover, Welch claims Defendants responded to his requests that they follow and enforce the PPE policy with refusals and unmodified behavior. (ECF No. 7 at 8.)

Third, Welch plausibly claims Defendants disregarded his Eighth Amendment rights—not just prison PPE policy, as Defendants insist. The subjective analysis requires a prison official to be deliberately indifferent to a violation of an inmate's Eighth

Amendment rights, not just a violation of prison policy. *See Cousins v. Lockyer,* 568 F.3d 1063, 1070 (9th Cir. 2009). It would be insufficient for Welch to base his claim solely on Defendants violating ESP or NDOC policy by failing to adorn PPE. *See id.* Rather, Welch must plausibly allege Defendants were deliberately indifferent to his underlying constitutional right to protection from exposure to serious disease. *See id.* Defendants' argument here intersects with the second prong of the qualified immunity analysis, which evaluates whether the claimed constitutional right is clearly established law. For the reasons outlined below on the second prong, Welch's claims implicate a right clearly established under the Eighth Amendment since 1993 and go beyond a mere violation of prison policy.

In sum, Welch plausibly alleges that Defendants were deliberately indifferent in violation of the Eighth Amendment when they refused to wear PPE and exposed Welch to COVID-19.

## 2. Clearly-established right

Under the second prong of the qualified immunity analysis, the Court asks whether the constitutional right the prison officials allegedly violated was "clearly established at the time of the violation." *Hines v. Youseff*, 914 F.3d 1218, 1228 (9th Cir. 2019). The burden of proof rests with the plaintiff to show that the right was so clearly established under the Eighth Amendment that the official knew or should have known they were violating the Constitution. *See Carley v. Aranas*, 103 F.4th 653, 660 (9th Cir. 2024). A precedent "case directly on point" is not required to make a right clearly established, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

The failure to provide "protection from infectious disease" is "firmly established in our constitutional law" as an Eighth Amendment claim. *Parsons v. Ryan*, 754 F.3d 657, 664, 676 (9th Cir. 2014). The Eighth Amendment requires prison officials to reasonably protect inmates from *exposure* to serious disease, not just actual infection. *See Helling*, 509 U.S. at 33. In *Helling*, the right was first applied to an inmate involuntarily exposed to

secondhand smoke. *See* 509 U.S. at 33. Courts have subsequently found that this right applies when, for example, an inmate is exposed to asbestos without sufficient protective gear. *See Wallis v. Baldwin*, 70 F.3d 1074, 1077 (9th Cir. 1995). In addition, a prison official violates the Eighth Amendment if they are deliberately indifferent to a "lack of adequate ventilation and air flow undermin[ing] the health of inmates and the sanitation of" the prison. *Hoptowit v. Spellman*, 753 F.2d 779, 784 (9th Cir. 1985).

Here, Defendants claim the R&R applies an inmate's Eighth Amendment right to protection from exposure to serious disease at too high a level of generality. (ECF No. 29 at 12.) *See also al-Kidd*, 563 U.S. at 742 (finding a clearly established right should not be defined using a high level of generality); *Carley*, 103 F.4th at 660-62. They contend Welch cannot point to clearly established law which would have notified Defendants that breaching prison policy by "refusing to wear PPE" is a constitutional violation. (ECF No. 29 at 12.) But as applied to the context of COVID-19, the case law dating back to 1993 does exactly that. *See Hampton*, 83 F.4th at 770 (finding the COVID-19 outbreak resulting from the transfer of inmates between prisons exposed inmates to serious disease in violation of clearly established law). In *Hampton*, the Ninth Circuit found that cases including *Helling*, *Parsons*, *Wallis*, and *Hoptowit* put "all reasonable prison officials" on notice in 2020 at the outset of the pandemic about their potential liability for exposing inmates to COVID-19. *See id.* Liberally construing Welch's claims, Defendants plausibly knew that refusing to comply with the PPE policy violates the Eighth Amendment because it risks exposing inmates to serious disease, hence the existence of the PPE policy.

Defendants argue the precedential cases apply only to situations where prison officials transferred inmates into risky environments and that there is no clearly established law applying to the situation here, where Defendants "kept [Welch] in his unit after he was already exposed to his COVID-19 positive neighbor." (ECF No. 29 at 13.) This distinction is unconvincing, because at minimum, Defendants acknowledge they kept Welch in an environment where he faced COVID-19 exposure. It is well-established that prisons assume "some responsibility" over inmates' basic human needs, including

medical care and reasonable safety, anytime an inmate is in custody. *See DeShaney v. Winnebago County Dept. of Social Services*, 489 U.S. 189, 199-200 (1989). Prison officials do not only assume this responsibility when transferring an inmate between environments. *See id.*

Relatedly, Defendants also suggest that making Welch shelter-in-place near other inmates with COVID-19 was the best option to stop the disease from spreading. (ECF No. 29 at 12.) Maybe so, but that is a factual question improper for resolution on a motion to dismiss. It does not resolve the fact that Welch plausibly alleges Defendants kept him where they knew he was exposed to serious disease—the risks of which were specifically known at the time of the violation—and that Plaintiff has a clearly-established Eighth Amendment right to be free from this kind of exposure.

The violation Welch claims is clearly established law, satisfying the second prong. Defendants are not entitled to a finding of qualified immunity at this time.

### III.   CONCLUSION

The Court notes that the parties made arguments and cited to cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that Defendants' Objection (ECF No. 29) to Judge Baldwin's Report and Recommendation (ECF No. 28) is overruled.

It is further ordered that Judge Baldwin's Report and Recommendation (ECF No. 28) is accepted and adopted in full.

It is further ordered that Defendants' Motion to Dismiss (ECF No. 21) is denied.

DATED THIS 23rd Day of June 2025.

MIRANDA M. DU
UNITED STATES DISTRICT JUDGE